50 C.C.P.A.

**Application of Jan J. WENT.**

**Patent Appeal No. 6833.**

United States Court of Customs and Patent Appeals.

Nov. 14, 1962.

Cushman, Darby & Cushman, Alvin Guttag, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of

counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Associate Judges, and Associate Judge JOSEPH R. JACKSON, Retired.

MARTIN, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1, 2, 3, 4 and 6, the only remaining claims of the application Serial No. 562,164, filed January 30, 1956, for LIQUID FUEL NUCLEAR FISSION REACTIONS.

Claim 6, representative of the appealed claims, reads:

"6. In a process for carrying out a self-sustaining nuclear chain fission reaction of the type in which a liquid nuclear fuel circulates through a nuclear reactor and through a heat exchanger in the form of a member of the group consisting of a solution of fissile material in common water, a solution of fissile material in heavy water, a suspension of fissile material in common water and a suspension of fissile material in heavy water, the nuclear fuel is made to flow at least through the nuclear reactor under the action of gravity and is subsequently conducted upwards to a level above the reactor through a substantially vertically disposed riser with the aid of a gas injected into this riser at its lower end wherein the liquid fuel is subsequently purified and recirculated to the reactor and the decomposition gases remaining after the removal of the liquid fuel are recombined in the presence of the injected gas and the recombined decomposition gases together with the lift gas are again injected into the riser, the improvement comprising utilizing as the lift gas a composition consisting mainly of a member of the group consisting of hydrogen and deuterium."

Claims 1, 2, 3 and 4 are more specific than claim 6 with respect to the lift gas and the type of carrier for the fissile material. Claims 2, 3 and 4 recite the use of a solution of fissile material in heavy water, a suspension of fissile material in common water and a suspension of fissile material in heavy water respectively, naming deuterium as the main constituent of the lift gas, while claim 1 specifies a solution of fissile material in common water naming hydrogen as the main constituent of the lift gas. No claim in the application has been allowed.

Appellant's application describes an improvement in a process for carrying out a self-sustaining nuclear fission reaction wherein liquid nuclear fuel in the form of a solution or suspension of fissile material in common or heavy water is circulated through a nuclear reactor and a heat exchanger under gravity and is subsequently conducted above the reactor through a vertically disposed riser by a gas lift, which gas is thereafter separated from the nuclear fuel and decomposition products and returned for injection into the riser. The specific improvement of that process over the prior art is said to lie in the use of a gas lift which consists mainly of hydrogen or deuterium. Appellant states that, as a result of the use of hydrogen or deuterium, the circulating nuclear fuel is saturated with hydrogen or deuterium and the decomposition of the common or heavy water to oxygen and hydrogen or deuterium occurring under the influence of the radiation generated by the nuclear fissions is repressed.

The reference [1] relied on is:

"Nucleonics," September 1954, pages 16–19.

Appellant and one H. de Bruyn are the joint authors of the article in the reference.

---

1. The examiner also cited page 29 of an Atomic Energy Commission Document ORNL–1583, which issued on October 22, 1953 and was declassified on December 3, 1955. The board however, did not consider that document necessary to support the examiner's rejection and we agree.

In sustaining the examiner's rejection of the claims, the board held them as unpatentable over the "Nucleonics" reference in the light of expected engineering skill.

The reference article describes and illustrates broadly a self-sustaining nuclear chain fission reactor process which utilizes a heavy water suspension of fissile material as a nuclear fuel, and a gas lift pump to circulate that fuel. The article makes no specific mention of a particular lift gas.

There appears to be no dispute that the process of the "Nucleonics" article, employing a heavy water suspension of fissile material and unspecified lift gas, is essentially the same as that described in appellant's application and no contention is made that any of the specific limitations in claims 1, 2, 3 and 4 would make any of those claims patentably distinct from claim 6. The sole issue is whether the utilization of a composition consisting mainly of hydrogen or deuterium as the lift gas in the reference process would or would not have been obvious to a person having ordinary skill in the art at the time appellant's invention was made.

To support his rejection of the claims the examiner gave three reasons why he considered hydrogen or deuterium to be obvious choices to an engineer skilled in the art. The examiner stated:

"I. Deuterium and oxygen are both present in the Nucleonics system and it is believed that the choice of either of such gases as the lift gas would be an obvious expedient to prevent the introduction of impurities into the system and to lighten the load on the gas purification apparatus employed in the circuit.

"II. The radiolytic decomposition of heavy water occurs in the system and is undesirable. It would be obvious to a chemical engineer therefore to use one of the products of the decomposition reaction, either deuterium or oxygen, as the lift gas in an attempt to decrease such decomposition according to the well known principal [sic] stated in the law of mass action.[2]

"III. Since the use of either deuterium or oxygen would be obvious for the above reasons it is now not actually necessary to consider whether the choice of deuterium alone is unobvious; however, it appears that the use of deuterium instead of oxygen would be apparent from the nuclear characteristics of the material. Since leakage of the lift gas into the critical region of the reactor itself is possible it is desirable to use a material that has the most favorable effect on the nuclear reaction taking place. The use of deuterium whose nuclear characteristics are far superior to oxygen would therefore be obvious. * * *"

As to III, the examiner went on to note that appellant admits that the choice of the gas was previously made on the basis of neutron capture. On such a basis the examiner stated that the use of deuterium would be apparent since it has an absorption cross-section of .00046 barns while oxygen has an absorption cross-section of .009 barns.

The examiner considered reasons I through III to be just as applicable to hydrogen and water as they are to deuterium and heavy water since deuterium is an isotope of hydrogen and exhibits essentially the same chemical characteristics. Regarding the nuclear characteristics of hydrogen with respect to oxygen, he pointed out that although hydrogen has a higher absorption cross-section than oxygen, its moderating properties, due to its lower atomic weight, are so

<hr>

2. The following definition from Lange's Handbook of Chemistry, 9th Ed., p. 1739 (1956), is relevant here:

"Mass Action, Law of—The law, * * * that the rate of a chemical reaction is proportional at any instant to the active masses of the reacting substances. By 'active mass' is meant the molecular concentration of the substance available for chemical reactions; i. e., the number of moles per unit volume. * * *"

far superior to those of oxygen that the choice of hydrogen over oxygen would be apparent.

The board agreed with the examiner's reasoning and concluded that the choice of hydrogen or deuterium would be obvious and well within the skill of the art. It took the view that the selection of hydrogen or deuterium as the lift gas in the "Nucleonics" article can be arrived at by simple and routine reasoning.

Appellant, on the other hand, asserts that the choice of hydrogen or deuterium as a lift gas is far from being an obvious one. In the past, he urges, the choice of a lift gas was determined by neutron capture capacity only, suitable gases being oxygen, helium, carbon monoxide, carbon dioxide and, to a certain extent, nitrogen and air. He further alleges that an increase in oxygen concentration actually promotes the decomposition of water or heavy water, whereas an increase in hydrogen or deuterium has the reverse effect and the presence of excess hydrogen or deuterium actually promotes water formation rather than water decomposition. Appellant also points out that hydrogen and deuterium are known to react with oxygen with explosive violence. Hence, it is argued, since oxygen is present in the decomposition products, the logical approach would have been to use an inert gas as the lift gas and thus avoid the danger of an explosion in the presence of the nuclear fuel.

After careful consideration of the arguments advanced, we are satisfied that the Patent Office tribunals were correct in finding that the use of a lift gas consisting mainly of hydrogen or deuterium in the nuclear reactor process of the "Nucleonics" article would be obvious to one skilled in the art. While it appears that hydrogen and deuterium may react with oxygen with explosive violence, we find nothing in the record which demonstrates that the person of ordinary skill in the art would not know that deuterium or hydrogen can be employed in the same system with oxygen *under operating conditions* which will *not* result in explosion. The "Nucleonics" article itself discloses

that heavy water is conventionally used as a carrier in a nuclear reactor process and such use inherently results in production of a mixture of deuterium and oxygen. The article, in conjunction with the recombination unit disclosed therein, specifically refers to a mixture of deuterium and oxygen which is apparently derived from the nuclear reactor process. That is a clear teaching that a mixture of oxygen and deuterium does not necessarily result in an explosive mixture.

Moreover, it is to be noted that the appealed claims merely recite utilizing as the lift gas a composition consisting mainly of hydrogen or deuterium. The claims do not undertake to set forth conditions necessary to avoid explosions. Appellant in his application has acknowledged that oxygen is among the decomposition products in the reactor process. Hence, since hydrogen and deuterium can apparently react with oxygen with explosive violence it would appear that "utilizing as the lift gas a composition consisting mainly of a member of the group consisting of hydrogen and deuterium" as recited in the appealed claim 6 might result in an explosive mixture unless appellant regulated the operating conditions to prevent the formation of an explosive mixture. We consider it obvious that one skilled in the art at the time of appellant's invention would have been aware that the formation of an explosive mixture of hydrogen or deuterium and oxygen can be prevented by the proper control of operating conditions.

On the positive side, the examiner has stated three reasons, supra, that would suggest the employment of hydrogen or deuterium, and the board has adopted them. We find nothing in the record which successfully challenges those reasons of the examiner. Therefore, we are convinced that one skilled in the art would find it obvious to utilize hydrogen or deuterium as the lift gas in the nuclear reactor process disclosed in the reference article.

In summary, since we are of the view that the use of a composition consisting mainly of hydrogen or deuterium as the

lift gas in a nuclear reactor process employing a nuclear fuel consisting of fissile material in heavy water or in common water would be obvious to one skilled in the art, the decision of the board is affirmed.

Affirmed.